[Cite as *State v. Austin*, 2013-Ohio-1159.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 26385 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES A. AUSTIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 09 2678(A) |

DECISION AND JOURNAL ENTRY

Dated: March 27, 2013

WHITMORE, Judge.

**{¶1}** Defendant-Appellant, Charles Austin, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

**{¶2}** During the late evening hours of September 11, 2011, a 2000 Dodge company van went missing from the parking lot of CSR Unlimited in Solon. Curtis Wilder, the man who took the van, then used it to pick up Austin and Austin's friend, Brian Collins. The three drove to a Kohl's Department store in Springfield Township, where a crew of electricians from Electrical Masters by MSR, Inc. ("MSR") were working inside the store. Once the three arrived outside Kohl's, Wilder exited the van and gained access to a Ford F-250 truck that was parked outside and had a construction trailer attached to it. The truck belonged to MSR and was equipped with Telogis GPS tracking.

{¶3} With Wilder operating the F-250 truck and Austin operating the Dodge van, the three men next traveled to Joe's Hawg Shop in Norton. There, Wilder used the van to ram the shop's garage door and some type of tool to pry open the shop's business door. He then placed two Harley Davidson motorcycles from the shop's garage, a strongbox from the shop, and other various items, into the F-250 truck's construction trailer. Before the three men left the area in the truck, Austin parked the Dodge van in a parking lot adjacent to Joe's Hawg Shop. The lot belonged to Fred Martin Superstore and acted as an overflow lot, such that many different vehicles were parked there.

{¶4} Even before the three men left Joe's Hawg Shop, an employee of MSR notified the police that the company's F-250 truck had been stolen and provided them with the GPS tracking information for the truck. The police began to search for the truck and identified it heading northbound on I-77 at Everhard Road. From there, a high-speed chase ensued for 51 miles until the police successfully used spike strips to deflate the truck's tires. The truck exited the highway at Lee Road in Cleveland and came to a stop. Wilder and Austin then ran from the truck on foot while Collins remained inside. The police ultimately found Austin hiding behind a garage in the surrounding neighborhood.

{¶5} A grand jury indicted Austin on each of the following counts: (1) grand theft of a 1990 Harley Davidson motorcycle; (2) grand theft of a 1994 Harley Davidson motorcycle; (3) theft of a strongbox from Joe's Hawg Shop; (4) receiving stolen property, related to the Dodge van; (5) breaking and entering Joe's Hawg Shop; (6) safecracking, related to the strongbox; (7) vandalism of Joe's Hawg Shop; and (8) receiving stolen property, related to the Ford F-250 truck. A jury trial ensued and the jury found Austin not guilty of theft and safecracking, but

guilty of the remaining counts. The trial court sentenced Austin on all six counts, but ran the sentences concurrent for a total sentence of 15 months in prison.

{¶6} Austin now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

AUSTIN'S CONVICTION ON COUNT 8, WHICH CHARGED HIM WITH RECEIVING THE STOLEN PROPERTY OF A FORD PICKUP TRUCK, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND MUST BE REVERSED.

{¶7} In his first assignment of error, Austin argues that his conviction for receiving stolen property, related to the Ford F-250 truck, is based on insufficient evidence. Specifically, he argues that there was no evidence that he ever controlled or possessed the truck or knew it was stolen. We disagree.

{¶8} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

"In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶9} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A). "[A] generally accepted definition of receive is to acquire

'control in the sense of physical dominion over or the apparent legal power to dispose of said property.'" *State v. Brewer*, 9th Dist. No. 99CA007483, 2000 WL 988766, *2 (July 19, 2000), quoting *State v. Jackson*, 20 Ohio App.3d 240, 242 (12th Dist.1984).

> [A] passenger in a vehicle may be convicted for receiving stolen property where there is evidence the passenger knew the vehicle was stolen and fled from the police. While [m]ere presence in a stolen vehicle is never sufficient to convict for receiving stolen property, if the passenger has reasonable cause to believe that the vehicle is stolen and either remain[s] for some time in the vehicle after that knowledge or participate[s] or aid[s] in the theft itself[,] a conviction for receiving stolen property can stand.

(Internal quotations and citations omitted.) (Alterations sic.) *State v. Rivers*, 9th Dist. No. 10CA009772, 2011-Ohio-2447, ¶ 8. "Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." *State v. Arthur*, 42 Ohio St.2d 67, 68 (1975).

{¶10} In addition to charging the jury with the elements of receiving stolen property, the trial court here also instructed the jury on complicity. The complicity statute provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). The phrase "aid or abet" means that a defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that [he] shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. A person guilty of complicity "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).

{¶11} Robert Leon, the owner of CSR Unlimited, testified that a 2000 Dodge van went missing from his company's parking lot on the night of September 11, 2011. The police later found the van in an overflow parking lot belonging to Fred Martin Superstore. Officer Christopher Besse testified that he heard the van's engine running while the police were investigating the break-in at Joe's Hawg Shop. He testified that the van had been backed into a parking space in line with the other vehicles in the lot. Upon further inspection, he observed the van was damaged. Specifically, it had damage to its back end and to its steering column. Officer Besse testified that the plastic ring that typically would be covering the wiring in the steering column was missing and two plastic pieces of the column had been separated such that the wires and the ignition tumbler had been exposed. Officer Besse explained that such damage is typical when someone steals a vehicle without the keys. Several officers testified that the police never found the keys to the van. Leon also verified that, before it went missing, his company's van was undamaged. He confirmed that neither Austin nor Austin's two companions had permission to use his company's van.

{¶12} David Meeks, the project manager for MSR, testified that MSR's employees took a Ford F-250 truck and construction trailer with them to Kohl's Department store on the night of September 11th. Meeks testified that his employees left the truck in the parking lot at approximately 8:15 p.m. and entered the store. At about 9:00 p.m., one of the employees exited the store with the keys to the truck to retrieve an item from it. The employee then notified Meeks that the truck and the construction trailer had been stolen. Meeks confirmed that neither Austin nor Austin's two companions had permission to use the truck.

{¶13} Detective John Canterbury testified that he interviewed Austin about two weeks after his arrest. Austin told the detective that he and his friend Collins planned to go out with a

man named Curtis Wilder on the night of September 11th to smoke marijuana. According to Austin, Wilder picked them up in a Dodge van and Austin assumed the van belonged to Wilder. Wilder then drove to the Kohl's in Springfield Township and told Austin and Collins that he was picking up his truck. Wilder drove the truck to Joe's Hawg Shop while Austin followed in the van. Once at Joe's Hawg Shop, Wilder parked the truck and took back control of the van. Austin and Collins watched as Wilder rammed the garage door of Joe's Hawg Shop with the back of the van. According to Austin, he and Collins stood there while Wilder gained access to the garage, removed two motorcycles and other items from inside it, broke into the business door of the shop, and removed a strongbox from inside. Wilder placed all of the items he took from the shop inside the construction trailer of the F-250 truck. At the time he was taking the second motorcycle to the truck, Wilder told Austin to follow him in the van. Austin got into the van, drove it to the adjacent parking lot, and parked it there. He and Collins then got back into the truck with Wilder and the three left.

{¶14} Joseph Huegle, the owner of Joe's Hawg Shop, testified that he had two Harley Davidson motorcycles in his shop's garage for repairs on the night of September 11th. He also testified that he kept a locked strongbox in his office file cabinet where he stored cash throughout the week. Huegle was unsure of the exact amount of cash he had in his strongbox before the break-in occurred, but believed it to be around $300. He verified that his shop's business door and garage door both sustained damage as a result of the break-in. Further, he testified that Austin and his companions did not have his permission to remove the motorcycles or other items from his shop.

{¶15} Ohio State Highway Patrol Trooper John Beeler testified that he joined the highway pursuit that ensued when the police identified the stolen F-250 truck that Wilder was

driving. Once the truck stopped, Trooper Beeler began to help search the area on foot, as both the driver and front seat passenger had fled from the truck. Trooper Beeler found Austin hiding behind a garage in a backyard of a nearby residence after about twenty minutes of searching. When Trooper Beeler searched Austin, he found a large amount of cash on him. Although Trooper Beeler could not recall the exact amount he found, he believed it to be somewhere between $150 and $500.

{¶16} Austin argues that his receiving stolen property conviction is based on insufficient evidence because there was no evidence that he ever drove the F-250 truck, otherwise exercised control over it, or knew that it was stolen. Austin avers that, because he was only ever in the truck as a passenger, there was insufficient evidence to convict him.

{¶17} This Court addressed a similar argument in *In re Bickley*, 9th Dist. No. 15974, 1993 WL 216273 (June 23, 1993). In *Bickley*, the appellant argued that there was insufficient evidence to find him delinquent for receiving stolen property when he knew a van was stolen, but had merely ridden in it as a passenger. *Bickley* at *1. In rejecting Bickley's argument that he never possessed the van, we held that there was circumstantial evidence of possession under a complicity theory. *Id.* at *2. We explained that:

> knowing the van was stolen, Bickley got into it and proceeded to use it for transportation. When the police approached, Bickley ran and hid. This was sufficient circumstantial evidence that Bickley, at least, aided and abetted in the retention of the stolen van by the driver.

*Id.* at *2. Consequently, we concluded that Bickley's riding in a van he knew to be stolen and running and hiding from the police when they approached was sufficient evidence that he received stolen property. *Id.* This Court reached a similar result in *State v. Rivers*. *Rivers*, 2011-Ohio-2447, at ¶ 21-22 (sufficient evidence of receiving stolen property where

circumstances were such that the defendant had reason to believe the vehicle in which he was a passenger was stolen and fled from the police after a high-speed chase ended).

{¶18} It is undisputed that the Dodge van and F-250 truck involved in this case were stolen. The evidence was that Wilder drove Austin and Collins to Kohl's in the van and took the truck from the parking lot. The three then went to Joe's Hawg Shop. Austin admitted that he drove the Dodge van twice; once to Joe's Hawg shop and once at Joe's Hawg shop when Wilder ordered him to drive the van to the adjacent lot. There was testimony that the van's steering column had been peeled and no key was present. Upon viewing the condition of the van's steering column, a reasonable person's suspicions should have been aroused. Even assuming that Austin's were not, however, Austin then witnessed Wilder use the van as a ram to break into Joe's Hawg Shop before taking motorcycles, a strongbox, and several other items from the shop. Nevertheless, he drove the van to the adjacent parking lot to park it for Wilder while Wilder moved the second motorcycle from the shop garage to the F-250 truck's construction trailer. There also was testimony that Austin parked the van in an inconspicuous position, backing the van into its parking space and parking it in line with the other vehicles in the lot. The van was still running, without a key, when the police arrived.

{¶19} Austin returned to the F-250 truck with Wilder after the theft incident at Joe's Hawg Shop. When the police finally stopped the truck, Austin fled on foot along with Wilder and hid from the police. Moreover, when the police finally apprehended him, they found a large amount of cash on him. Huegle, the owner of Joe's Hawg Shop, testified that he kept several hundred dollars in cash in the strongbox that was taken from his shop. The strongbox was found, pried open, in the F-250 truck's construction trailer along with the other items taken from Joe's Hawg Shop.

**{¶20}** Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved that Austin either committed or was complicit in the commission of the crime of receiving stolen property. The totality of the circumstances was such that a reasonable person would have known the F-250 truck was stolen. Nevertheless, Austin repeatedly rode in the truck and helped Wilder move the van out of the way while Wilder loaded another stolen motorcycle onto the truck's construction trailer. He also fled on foot from the police when they stopped the truck. *See State v. Nichols*, 9th Dist. No. 24900, 2010-Ohio-5737, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997) ("It is an established principle of law that '[f]light from justice * * * may be indicative of a consciousness of guilt.'"). As previously noted, "[a] passenger in a vehicle may be convicted for receiving stolen property where there is evidence the passenger knew the vehicle was stolen and fled from the police." *Johnson*, 2007-Ohio-4133, at ¶ 15. Austin got back into the truck after he had reasonable cause to believe it was stolen. *Rivers*, 2011-Ohio-2447, at ¶ 8, quoting *In re Bromfield*, 1st Dist. No. C-030446, 2004-Ohio-450, ¶ 12. Additionally, there was evidence that he aided Wilder in the theft by moving the stolen van for Wilder while the theft was in progress. In light of all the foregoing, we cannot conclude that Austin's conviction for receiving stolen property, related to the F-250 truck, is based on insufficient evidence. Austin's first assignment of error is overruled.

Assignment of Error Number Two

> AUSTIN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF
> THE EVIDENCE, AND OUGHT TO BE REVERSED.

**{¶21}** In his second assignment of error, Austin argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶22}** In determining whether a conviction is against the manifest weight of the evidence an appellate court:

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶23} Austin argues that his convictions are against the manifest weight of the evidence because Wilder was solely responsible for the events that occurred while Austin was with him. According to Austin, he was not aware that the vehicles Wilder took were stolen, he never aided Wilder with the break-in at Joe's Hawg Shop, and there was not a reasonable period of time when he could have abandoned Wilder before the high-speed chase ensued.

{¶24} Based on our review of the record, we cannot agree that Austin's convictions are against the manifest weight of the evidence. There was testimony that the Dodge van Austin drove on two occasions had a damaged steering column. Although Austin claimed during his interview with Detective Canterbury that he saw a key for the van at some point, the police never recovered a key. Austin also left the van's engine running when he parked it in the lot adjacent to Joe's Hawg Shop. The jury could have inferred that, had there been a key to the van, Austin would have turned off the van's engine before abandoning it. Moreover, Austin parked the van

in such a way that it was inconspicuous; backing it into a space so that the damage to its rear was not immediately observable and parking it in line with the other vehicles in the lot. The jury could have inferred that, by driving the van twice and parking it in the manner that he did after having witnessed Wilder break into Joe's Hawg Shop, Austin intended to aid Wilder in the commission of his crimes.

{¶25} As for Austin's argument that there was no reasonable time during which he could have abandoned Wilder, Austin was present for the duration of the break-in at Joe's Hawg Shop. He did not walk away or refuse to remain with Wilder even after it became clear that Wilder intended to steal items from the shop. Instead, he aided Wilder by moving the van and then returned to the F-250 truck to leave with Wilder. When the police finally did stop the truck, Austin fled on foot and hid behind a garage in a nearby neighborhood. Given his behavior, the jury could have chosen to believe that Austin shared Wilder's criminal intent.

{¶26} Having reviewed the record, we cannot conclude that this is the exceptional case where the jury lost its way by convicting Austin. Austin's convictions are not against the manifest weight of the evidence. As such, his second assignment of error is overruled.

Assignment of Error Number Three

THE TRIAL COURT VIOLATED AUSTIN'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS AND COMMITTED REVERSIBLE ERROR WHEN IT IMPOSED SENTENCES UPON AUSTIN FOR ALLIED OFFENSES OF SIMILAR IMPORT.

{¶27} In his third assignment of error, Austin argues that the trial court erred by convicting him of allied offenses of similar import. Specifically, he argues that his breaking and entering conviction should have merged with his conviction for vandalism.

{¶28} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, the Supreme Court of Ohio held that, in determining whether two offenses are allied offenses of similar

import, "the conduct of the accused must be considered." The court must first determine "whether it is possible to commit one offense and commit the other with the same conduct," and, if so, then "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'" (Emphasis omitted.) *Id.* at ¶ 48, 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring). If the answer to both inquiries is yes, then the offenses must be merged. *Johnson* at ¶ 50. "Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because 'a defendant is prejudiced by having more convictions than are authorized by law.'" *State v. Asefi*, 9th Dist. No. 26430, 2012-Ohio-6101, ¶ 6, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶29} The record does not support the conclusion that the trial court considered and applied *Johnson* when it sentenced Austin. Neither the court, nor the parties ever discussed *Johnson* or the issue of merger. Were this Court to apply *Johnson* to Austin's breaking and entering and vandalism convictions, we would be doing so in the first instance. This Court has consistently declined to do so. *See, e.g., State v. Chisholm*, 9th Dist. No. 26007, 2012-Ohio-3932, ¶ 22. The State here has acknowledged that the trial court did not consider *Johnson* and has requested that this Court remand the matter. We agree that a remand is appropriate, given our prior decisions. Therefore, this matter must be remanded to the trial court for it to apply *Johnson* and determine whether Austin's offenses should merge. "Moreover, in the event that the offenses are allied, 'the State also must have the opportunity to elect the offense[] upon which it wishes to proceed to sentencing.'" *Asefi* at ¶ 8, quoting *State v. Ziemba*, 9th Dist. No. 25886, 2012-Ohio-1717, ¶ 23. Austin's third assignment of error is sustained solely on the basis that this matter must be remanded, consistent with the foregoing discussion.

III

{¶30} Austin's first and second assignments of error are overruled. His third assignment of error is sustained insofar as the matter is remanded for the trial court to apply *State v. Johnson* in the first instance. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.