[Cite as *In re A.R.*, 2025-Ohio-1160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.R. | : | APPEAL NO. C-240436<br>TRIAL NO. 22/3325-02 Z |
| | : | |
| | : | *O P I N I O N* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 2, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Margaret Kane*, Assistant Public Defender, for Defendant-Appellant A.R.

**Bock, Judge.**

**{¶1}** Defendant-appellant A.R. appeals his delinquency adjudication for acts that would constitute receiving stolen property if committed by an adult. A.R. challenges the sufficiency and weight of the State's evidence, arguing that the State failed to prove that he received the stolen car or that he knew the car was stolen.

**{¶2}** We disagree and hold that his adjudication was supported by sufficient evidence and not contrary to the manifest weight of the evidence. Eyewitness testimony describing A.R.'s flight from both a crashed car on an expressway and bystanders offering assistance proved that he used the stolen car for transportation and aided and abetted the driver. And the peeled steering column, broken window, and lack of car keys, combined with his flight, proved that A.R. knew the car was stolen.

**{¶3}** We overrule A.R.'s assignment of error and affirm his adjudication.

## I.    *Factual and Procedural History*

**{¶4}** The State filed a complaint in the juvenile court, which alleged that A.R. was delinquent for actions that would constitute receiving stolen property in violation of R.C. 2913.51(A) if committed by an adult.

**{¶5}** At A.R.'s delinquency hearing, the owner of a Hyundai Elantra recalled parking her car in her apartment complex parking lot. Two days later, she learned that her car crashed on an expressway underpass in Norwood, Ohio. She was unsure when her car was stolen, or who stole it.

**{¶6}** On the day of the crash, L.M. was attending a drama rehearsal at a church in Norwood. With the church doors open, L.M. heard a crash and, with other churchgoers, "went out to see if they needed medical assistance." L.M. "looked down over the ridge" and spotted three young men running up an embankment alongside

the expressway in the direction of a pet-boarding facility. L.M. identified A.R. as one of those young men.

{¶7} When one of the young men emerged from the pet-boarding facility, L.M. asked, "[D]o you need some help or assistance?" According to L.M., the young man replied, "[W]hat are you talking about?" After L.M. referenced the crash, the young man turned to A.R. and the other young man and said, "[B]olt out of here." They separated. L.M. testified that "[o]ne went by himself," while A.R. and one young man ran down a set of railroad tracks to a fenced area near an abandoned warehouse.

{¶8} L.M. encountered off-duty Norwood Police Officer Town, who had been driving in the area. Officer Town noticed a group of people that appeared to be "searching for something." With his car stopped, Officer Town saw three young men running and "looking back behind them, like they were running from something."

{¶9} L.M. told Officer Town about the crash. While Officer Town called for an on-duty officer, L.M. "started up the train tracks, and [then] yelled back at [Officer Town] that he could see them." When Officer Town reached the warehouse, A.R. "came back out." Officer Town identified himself to A.R. and told A.R. to stop. A.R. complied and waited with Officer Town for uniformed officers to arrive. Officer Town recalled that the other young man "was found on top of the building, and [officers] were able to get him into custody as well." L.M. and Officer Town both testified that they did not see the crash or where the young men were seated in the car.

{¶10} Norwood Police Officer Froefel responded to the scene of the crash. After "pulling back the airbags," he "noticed that the steering column had been ripped from the vehicle and the wires were hanging from it." Officer Froefel explained that a "peeled" steering column is "indicative of a stolen vehicle based off of the TikTok challenge that's gone viral." He also noticed that there was no key in the vehicle and a

"busted out" rear driver's side window that had "something potentially covering it." According to Officer Froefel, a "busted out" window is also indicative of a car theft.

**{¶11}** At the close of the State's case, A.R. unsuccessfully moved for an acquittal under Juv.R. 29.

*The juvenile court adjudicated A.R. delinquent*

**{¶12}** The magistrate found A.R. delinquent for receiving stolen property. Relevant here, the magistrate found that circumstantial evidence proved that A.R. knew or should have known that the car was stolen. That circumstantial evidence included flight from the scene of the crash, the peeled steering column, the broken window, and the lack of a key in the car.

**{¶13}** The juvenile court overruled A.R.'s objections, adopted the magistrate's decision, and adjudicated A.R. delinquent. In its entry, the juvenile court emphasized the "context of the scene," that A.R. was identified as one of the young men running from the crash "in an area where people would typically not be walking." Plus, A.R. was taken into custody outside of an abandoned warehouse. To the juvenile court, this proved that A.R. was in the car before the crash. Turning to A.R.'s knowledge that the car had been stolen, the juvenile court cited Officer Froefel's testimony that a peeled steering column and broken window are evidence of a car theft. The juvenile court found it reasonable "to conclude that A.R.[,] wherever A.R. was in the vehicle, he was able to see the stripped steering column."

**{¶14}** The juvenile court placed A.R. on community control.

## II.   Analysis

**{¶15}** R.C. 2913.51(A) provides, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." A.R. challenges the State's

proof of two elements of the offense. First, he maintains the evidence did not show that he "received or retained" the stolen car. Second, he argues that the State failed to prove that he knew the car was stolen.

**{¶16}** In delinquency cases, we review sufficiency and manifest-weight challenges "under the same standards of review applied in adult criminal cases." *In re S.J.*, 2023-Ohio-3441, ¶ 19 (1st Dist.). To review the sufficiency of the evidence, we view the evidence in a light most favorable to the State to determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶17}** But when analyzing the manifest weight of the evidence, we sit as the thirteenth juror. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). At its core, the weight of the evidence measures "'the greater amount of credible evidence.'" *Id.*, quoting *Black's Law Dictionary* (6th Ed. 1990). To determine whether A.R.'s adjudication is against the manifest weight of the evidence, we "review[] the entire record, weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

### A. *A.R. received the stolen car*

**{¶18}** To adjudicate A.R. delinquent, the State had to prove that A.R. "receive[d], retaine[d], or dispose[d] of" the stolen car. R.C. 2913.51(A).

**{¶19}** A person "receives" stolen property if he "acquire[s] 'control in the sense of physical dominion over or the apparent legal power to dispose of said property.'" *State v. Austin*, 2013-Ohio-1159, ¶ 9 (9th Dist.), quoting *State v. Brewer*, 2000 Ohio

5

App. LEXIS 3218, *2 (9th Dist. July 19, 2000), quoting *State v. Jackson*, 20 Ohio App.3d 240, 242 (12th Dist. 1984). Circumstantial evidence alone can prove dominion and control. *State v. Johnson*, 2019-Ohio-3877, ¶ 49 (1st Dist.).

**{¶20}** A person "retains" stolen property if he "'hold[s] or continue[s] to hold in possession or use: continue[s] to have, use, recognize, or accept'" the property. *In re Bromfield*, 2004-Ohio-450, ¶ 14 (1st Dist.), quoting *Webster's Third New International Dictionary* (1993). A person may have actual or constructive possession over property. *See State v. Devaughn*, 2020-Ohio-651, ¶ 32 (1st Dist.). A person constructively possesses property "'if he is able to exercise dominion and control over [the property], even if he does not have immediate physical possession of it.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.

1. *Passengers may be criminally liable for receiving stolen property*

**{¶21}** It is well established in Ohio that a passenger can be liable for receiving a stolen vehicle because "receipt and/or retention of a stolen vehicle can be a joint enterprise." *In re Windle*, 1993 Ohio App. LEXIS 5805, *5 (10th Dist. Dec. 2, 1993). A passenger may be criminally liable because "one who acts in complicity with another in committing an offense is guilty of that offense." *In re Bromfield* at ¶ 14, citing R.C. 2923.03(F).

**{¶22}** A defendant's aiding and abetting another in committing an offense is acting in complicity with that person. *Id.*, citing R.C. 2923.03(A)(2). Defendants aid and abet when they share the wrongdoer's criminal intent and they encourage, support, advise, incite, participate in, or cooperate with the wrongdoer in committing the crime. *State v. Tobias*, 2003-Ohio-2336, ¶ 28 (1st Dist.). A defendant's presence at the scene or association with the wrongdoer alone is insufficient to show complicity. *Id.* Rather, there must be an affirmative act by the defendant "'to assist, encourage, or

6

participate in the crime by some act, deed, word, or gesture.'" *Id.*, quoting *State v. Mootispaw*, 110 Ohio App.3d 566, 570 (1996). Courts may infer participation from the defendant's conduct, presence, and camaraderie before and after the offense. *Id.*, quoting *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001).

{¶23} In *Bromfield,* this court held that a passenger can be convicted for receiving stolen property if the passenger has "reasonable cause to believe that the vehicle is stolen and either remain[ed] for some time in the vehicle after that knowledge or participate[d] or aid[ed] in the theft itself." *In re Bromfield,* 2004-Ohio-450, at ¶ 14 (1st Dist.). And a passenger can be convicted for receiving stolen property if he "used a stolen vehicle for transportation or for his own personal entertainment." *Id.* at ¶ 14; *see State v. Rivers,* 2011-Ohio-2447, ¶ 11 (9th Dist.); *see also State v. Dildine,* 2010-Ohio-3648, ¶ 12 (2d Dist.). While we acknowledged that a passenger's "mere presence in a stolen vehicle is never sufficient" to establish that the passenger received the property, we held that "[a] passenger's use of a stolen vehicle for transportation, combined with his running and hiding when police approach, amounts to sufficient circumstantial evidence that the passenger aided and abetted the driver." *In re Bromfield* at ¶ 12, 15.

{¶24} The length of time a passenger is in the car is a relevant factor, though no arbitrary amount of time separates a passenger's mere presence in a car from the passenger's using the car for transportation or entertainment. *See id.* at ¶ 9-11 (collecting cases); *see also In re Windle*, 1993 Ohio App. LEXIS 5805, at *7 (10th Dist. Dec. 2, 1993) (five hours in the vehicle); *State v. Sims*, 10 Ohio App.3d 56, 59 (8th Dist. 1983) (30 seconds in the vehicle). Courts have also considered whether the passenger knew the car was stolen and declined the "opportunity to end his association" with the crime. *In re Bromfield* at ¶ 16. Moreover, flight from a stolen car may be evidence of

consciousness of guilt because "participation may be inferred from [a defendant's] behavior before and after the offense occurs." *Rivers* at ¶ 22; *see In re Bromfield* at ¶ 17; *see also State v. Summerlin*, 2017-Ohio-7625, ¶ 21 (1st Dist.).

2. *A.R. received or retained the car*

**{¶25}** A.R. maintains that the evidence fails to prove that he had been in the stolen car, used it for transportation or entertainment, or aided and abetted the driver. A.R. supports his argument by emphasizing the lack of eyewitness accounts of the crash. A.R. correctly recognizes that the State need not produce direct evidence; rather, circumstantial evidence ""may also be more certain, satisfying and persuasive than direct evidence."" *State v. Orr,* 2014-Ohio-4680, ¶ 60 (8th Dist.), quoting *State v. Lott,* 51 Ohio St.3d 160, 167 (1990), quoting *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960). And circumstantial evidence may establish the identity of the person who committed the crime. *Orr* at ¶ 60, quoting *State v. Scott*, 3 Ohio App.2d 239, 244-245 (7th Dist. 1965).

**{¶26}** L.M. watched A.R., along with two other young men, run up an embankment and away from the crash site on an expressway underpass. A fair, reasonable, and logical conclusion drawn from these circumstances is that A.R. was in the stolen car when it crashed. And the stolen car crashed on an expressway, which creates a reasonable inference that A.R. used the stolen car for transportation, rather than merely being present in the car for an insignificant amount of time. *Compare Sims*, 10 Ohio App.3d at 59 (8th Dist. 1983) (defendant was "a passenger in the car [parked in front of a business] with [the driver] for about thirty seconds when he and his women companions were ordered out of the car by police.").

**{¶27}** Moreover, A.R. fled alongside his counterparts from both the crash and the churchgoers. Flight, including flight from a crash, may demonstrate a

consciousness of guilt. *See State v. Malvasi*, 2022-Ohio-4556, ¶ 70 (7th Dist.). Flight, as an "escape or affirmative attempt to avoid apprehension[,] . . . can take the form of fleeing from . . . eyewitnesses." *State v. Brundage*, 2004-Ohio-6436, ¶ 17 (1st Dist.). Notably, A.R. ran from churchgoers after L.M. asked the young men if they needed help. So contrary to A.R.'s argument, there is evidence that he aided and abetted the driver in receiving the stolen car.

**{¶28}** A.R. argues that these conclusions rest on impermissible inference stacking. A.R. is correct that Ohio prohibits the use of inference stacking to form the basis of a conviction. *See State v. Greeno*, 2021-Ohio-1372, ¶ 33 (4th Dist.). Inferences are "'conclusion[s] which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *State v. Armstrong*, 2016-Ohio-7841, ¶ 22 (11th Dist.), quoting *State v. Nevius*, 147 Ohio St. 263, 274 (1947). An inference "may be drawn from the facts and conditions established." *Id.* at ¶ 23.

**{¶29}** Impermissible inference stacking is drawing an inference ""entirely upon another inference, unsupported by any additional fact or another inference from other facts."" *Greeno* at ¶ 31, quoting *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.,* 164 Ohio St. 329 (1955), paragraph one of the syllabus. In essence, the rule "forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture." *Armstrong* at ¶ 23. But inference stacking is not drawing parallel inferences, which are inferences "'based in part upon another inference and in part upon factual support.'" *Greeno* at ¶ 34, quoting *Hurt* at paragraph three of the syllabus. Nor does it consist of drawing two or more inferences from "a given state of facts" because "in such case one inference is not built upon another but each is drawn

separately from the same facts." *McDougall v. Glenn Cartage Co.,* 169 Ohio St. 522 (1959), paragraph two of the syllabus.

**{¶30}** A rational trier of fact could conclude that A.R. received or retained the stolen car without resorting to inference stacking. We can infer that he used the car for transportation from the fact that the stolen car crashed on an expressway. And his flight from both the crash and witnesses creates an inference that he aided and abetted the driver.

**{¶31}** Viewing the circumstantial evidence in a light favorable to the State, a rational trier of fact could find that the evidence proved that A.R. received the stolen property. The evidence sufficed to establish the "received or retained" element.

**{¶32}** And when we review the record, consider the credibility of the witnesses, and weigh the evidence, we cannot say that the juvenile court lost its way when it found that A.R. received or retained the stolen vehicle. A.R. does not argue that the witnesses were not credible. Indeed, L.M.'s and Officer Town's accounts of A.R.'s flight after the crash were consistent. And the lack of evidence of the events before the crash does not make it unreasonable to infer, from the site of the crash and A.R.'s flight, that he used the car for transportation or aided and abetted the driver.

### B. *The State proved that A.R. knew the car was stolen*

**{¶33}** A.R. argues that the evidence failed to establish that he knew or should have known that the vehicle was stolen. Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Knowledge "'is rarely shown by direct evidence.'" *State v. Saleem*, 2024-Ohio-3162, ¶ 44 (1st Dist.), quoting *State v. Benson*, 2019-Ohio-3255, ¶ 39 (1st Dist.).

Therefore, the State usually proves a defendant's knowledge through circumstantial evidence. *In re L.M.,* 2024-Ohio-2974, ¶ 45 (1st Dist.).

**{¶34}** The State had to prove A.R. "either knew or should have known that the property had been stolen." *Id.* at ¶ 47. Knowledge is determined "'from the totality of the circumstances surrounding the alleged crime.'" *In re J.G.,* 2024-Ohio-2423, ¶ 30 (1st Dist.), quoting *State v. Johnson*, 2020-Ohio-4077, ¶ 15 (1st Dist.). Courts may infer knowledge from a defendant's unexplained or inadequately explained possession of stolen property. *Id.,* citing *State v. Pangburn*, 2016-Ohio-3286, ¶ 15 (12th Dist.). A defendant should know property was stolen when "the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property" was stolen. *State v. Kirby,* 2006-Ohio-5952, ¶ 11 (10th Dist.), citing *State v. Braxton*, 102 Ohio App.3d 28, 44 (8th Dist. 1995), citing 4 *Ohio Jury Instructions*, § 513.51(4) (1994); *see In re Windle*, 1993 Ohio App. LEXIS 5805, at *5 (10th Dist. Dec. 2, 1993).

**{¶35}** Courts have held that a reasonable passenger who sees a peeled or dismantled steering column in a car being driven without a key knows or should know that the car is stolen. *State v. Austin*, 2013-Ohio-1159, ¶ 18 (9th Dist.); *see State v. Johnson,* 2007-Ohio-4133, ¶ 21 (9th Dist.). Indeed, a peeled steering column and broken windows are considered the "typical indicia of a stolen vehicle." *State v. Dobson,* 2001 Ohio App. LEXIS 3036, *17 (8th Dist. July 5, 2001). And a defendant's unexplained possession of property, combined with his flight, has been held to be sufficient to prove that the defendant knew the property was stolen. *See State v. Hall*, 2009-Ohio-5695, ¶ 24 (8th Dist.), citing *State v. West*, 1999 Ohio App. LEXIS 5309, *11 (8th Dist. Nov. 10, 1999); *see also State v. Patterson*, 2018-Ohio-3348, ¶ 52 (1st Dist.); *State v. Hughley*, 2020-Ohio-1277, ¶ 48 (8th Dist.).

**{¶36}** Here, when the evidence is viewed favorably to the State, a reasonable trier of fact could find that A.R. knew, or should have known, that the car was stolen. Officer Froefel testified that the steering column had been dismantled and "wires were hanging from underneath the steering wheel," the rear driver's side window was broken, and there was no key in the car. Officer Froefel testified that this is consistent with recent car-theft trends. While there was no testimony identifying A.R.'s placement in the car, it is reasonable to infer that he could see either the broken window or the peeled steering column. Plus, A.R. fled from the crash and bystanders.

**{¶37}** The State's circumstantial evidence was sufficient to prove that A.R. knew the car was stolen. And when we independently weigh the evidence and consider the credibility of the witnesses, his adjudication is consistent with the weight of the evidence. We overrule the assignment of error.

### III. Conclusion

**{¶38}** We overrule A.R.'s assignment of error and affirm his delinquency adjudication.

Judgment affirmed.

**KINSLEY, P.J.,** and **NESTOR, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.