[Cite as *State v. Culver*, 2014-Ohio-681.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26945 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEREMY CULVER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 01 0060 (A) |

DECISION AND JOURNAL ENTRY

Dated: February 26, 2014

CARR, Judge.

{¶1} Appellant Jeremy Culver appeals his conviction and sentence from the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands for the limited purpose of resentencing upon the State's election of the offense on which it wishes to proceed to sentencing.

I.

{¶2} Culver and his brother Shawn Davis were indicted on one count of aggravated burglary and one count of aggravated robbery based on incidents that occurred on December 27, 2011. Both charges included firearm specifications pursuant to R.C. 2941.145. Culver was also individually indicted on one count of possession of counterfeit controlled substances. Culver pleaded not guilty to the charges at arraignment. Culver was subsequently indicted, along with Davis and Todd Little, on one count of aggravated robbery based on an incident that occurred on November 26, 2011. This supplemental count also included a firearm specification.

{¶3} The various counts were bifurcated for trial, although Culver and Davis were tried together. At the conclusion of the first trial before a visiting judge, Culver was convicted of aggravated burglary and aggravated robbery as alleged to have occurred on December 27, 2011. The two firearm specifications associated with those counts were dismissed after the jury did not find that Culver had a firearm. Culver was acquitted of the charge of possession of counterfeit controlled substances after the trial court granted his motion for acquittal pursuant to Crim.R. 29. The visiting judge sentenced Culver to seven years in prison for each felony count, but then ordered that the sentences "MERGED for sentencing purposes." The sentencing entry noted that Culver would be tried on the remaining aggravated robbery and firearm specification counts at a later date. Culver filed a notice of appeal. This Court dismissed that appeal because Culver failed to pay a cost deposit or file a waiver.

{¶4} On September 24, 2012, the trial court held a change of plea hearing at which Culver pleaded guilty to the aggravated robbery charge arising out of a November 26, 2011 incident, and the companion firearm specification. The trial court through the judge originally assigned to this case, issued a judgment on September 28, 2012, wherein it recited the following: Culver pleaded guilty to aggravated robbery with a firearm specification as contained in count four; he was found guilty after a jury trial of aggravated burglary and aggravated robbery as contained in counts one and two; the firearm specifications associated with counts one and two were dismissed; and Culver was acquitted of possession of counterfeit controlled substances as contained in count three. The trial court reiterated that counts one and two were merged for sentencing purposes and that Culver was sentenced to a definite term of seven years in prison. The court neither reiterated the separate seven-year sentences that the visiting judge asserted "merged," nor did the assigned judge indicate for which charge the seven-year sentence was

imposed. Finally, the trial court sentenced Culver to a mandatory three-year term for the firearm specification and to four years for aggravated robbery (count four), with these terms to run consecutively for a total of seven years. It ordered that the earlier seven-year sentence for the merged counts one and two would be served concurrently with the above seven-year sentence.

{¶5} On February 15, 2013, Culver filed a notice of appeal from the September 28, 2012 judgment, further asserting that he was filing a motion for leave to file a delayed appeal. This Court dismissed this appeal as untimely, noting that Culver had failed the file the motion for leave notwithstanding his assertion to the contrary. He subsequently filed the instant (third) notice of appeal, along with a motion for leave to file a delayed appeal. This Court granted leave. Culver raises two assignments of error for review.

## ASSIGNMENT OF ERROR I

APPELLANT CULVER'S CONVICTIONS FOR AGGRAVATED ROBBERY AND AGGRAVATED BURGLARY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} Culver argues that his convictions for aggravated robbery and aggravated burglary, alleged to have occurred on December 27, 2011, were against the manifest weight of the evidence. This Court disagrees.

{¶7} This Court employs the following analysis:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth

juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5. This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶8}    Culver was charged with aggravated burglary in violation of R.C. 2911.11(A)(2) which provides: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control." Pursuant to R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." The code defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A). A criminal trespass occurs when one "without privilege to do so * * * [k]nowingly enter[s] or remain[s] on the land or premises of another[.]" R.C. 2911.21(A)(1). This Court recognizes that a privilege may be revoked and that a privilege to enter or remain upon the premises terminates immediately upon the commencement of an act of violence against the person granting the privilege. *See State v. Watson*, 9th Dist. No. 14286, 1990 WL 80550, *2 (June 13, 1990).

{¶9} Culver was also charged with aggravated robbery in violation of R.C. 2911.01(A)(1) which provides: "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶10} Under Ohio law, "a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense." *State v. Coleman*, 37 Ohio St.3d 286, paragraph two of the syllabus (1988).

{¶11} On December 27, 2011, John Ruggiero called 911 to report that three men with guns entered his home after he allowed one of the men inside to test an Xbox gaming system he had listed for sale on Craigslist. He admitted to the 911 operator that he fired his handgun at one of the perpetrators. A recording of the 911 call was admitted into evidence.

{¶12} Mr. Ruggiero testified as follows at trial. He placed an ad on Craigslist to sell a friend's Xbox 360 gaming system, which included a wireless controller. A copy of the ad was admitted into evidence. His friend agreed to let him keep all proceeds from the sale over $150.00. Mr. Ruggiero listed his cell phone number in the ad. He received an inquiry from a man who identified himself as "J" and who expressed interest in the Xbox. The two men agreed to meet between 6 and 7 p.m. at the AutoZone at Archwood and Arlington in Akron. "J" told Mr. Ruggiero that he would be in a white car with black windows. As Mr. Ruggiero waited in the AutoZone parking lot, "J" called and asked to meet at Mr. Ruggiero's house because he wanted to test the Xbox to ensure that it worked before he bought it. Mr. Ruggiero, although

uncomfortable, agreed because he understood the prospective buyer's concern. Mr. Ruggiero then tucked his .45 caliber handgun in his pants near the small of his back.

{¶13} Mr. Ruggiero watched from his front door as "J," whom he identified as Culver, was dropped off from a white Buick. Culver was wearing a hoodie. Mr. Ruggiero plugged in the Xbox, Culver tested it, and he agreed to buy it. Mr. Ruggiero returned the gaming system to its box. Culver then made a couple of cell phone calls as he paced back and forth between Mr. Ruggiero's living room and enclosed porch. He explained that his "buddies" and "his ride" had gone to Circle K. Mr. Ruggiero heard Culver asked someone on the phone, "Where you at?"

{¶14} After Culver entered the enclosed porch a third time, Mr. Ruggiero heard what he described as a loud "boof, boof," and three men ran into his home with guns, specifically, a silver pistol and a black handgun. Two of the men had hoodies pulled over their faces, while the third had a black bandanna over his face. One of the men, whom Mr. Ruggiero later identified as Shawn Davis, put a silver pistol to Mr. Ruggiero's head and ordered him to his knees. Culver and the third man returned to the enclosed porch where Mr. Ruggiero heard them yelling "get on the ground," although there was no one else on the porch. In the meantime, Davis ordered Mr. Ruggiero to empty his pockets, and Mr. Ruggiero gave Davis approximately $80.00. Davis yelled to his companions on the porch to come watch the victim. Noticing that Davis was distracted as he called to the others, Mr. Ruggiero stood up, took the safety off his gun, cocked it, and fired two shots towards Davis and the doorway to the porch. Mr. Ruggiero was not sure whether his bullets hit anyone.

{¶15} After Mr. Ruggiero fired his gun, the three men fled. Mr. Ruggiero watched the men drive away. He then called 911.

{¶16} Mr. Ruggiero identified a silver pistol in a photograph later taken by the police as the gun that Davis had held to his head. He also identified a black handgun found by the police in his front garden near where the three perpetrators exited his home as the other weapon he saw during the incident. Mr. Ruggiero was not certain whether Culver or the third man possessed the black handgun during the incident.

{¶17} Mr. Ruggiero denied that this incident involved a drug sale, that Culver came to his home to buy marijuana, or that he was engaged in the sale of drugs. He further denied possessing his .45 caliber handgun for protection. He asserted that he enjoyed firing guns at target ranges. In addition, he acknowledged that he owned two dogs, including a pitbull. He rescued the pitbull from an abusive situation. Both dogs remained in their cages while Culver tested the Xbox.

{¶18} Janice Shaffer lived near Mr. Ruggiero for more than five years and described him as "a good kid." She did not believe that he was a drug dealer or drug user. She had never seen "short term traffic" in and out of his home or people visiting his home at unusual times. She never smelled marijuana from his home. Ms. Shaffer described Mr. Ruggiero's pitbull as a "sweetheart."

{¶19} Ms. Shaffer was returning home around 6:15 p.m. on December 27, 2011, when she witnessed two men, dressed in black, running out of Mr. Ruggiero's house. They threw open the door to the home, and one of the men fell but got back up. The men ran to a white car, got into the front seat, and drove away. Ms. Shaffer noted the license plate number of the car as it sped away. She called 911 and gave the operator a description of the car. She also noticed a third man running up the street about a quarter of a block from Mr. Ruggiero's house.

{¶20} Ms. Shaffer testified that Mr. Ruggiero ran outside from his home. He appeared scared and was shaking. He yelled, "They robbed me, they came in the house. They held me by a gun to my head."

{¶21} Officer Brian French of the Akron Police Department responded to a burglary call on December 27, 2011, at Mr. Ruggiero's home on Triplett Boulevard, in Akron. He spoke with both Mr. Ruggiero and Ms. Shaffer at the scene. Ms. Shaffer informed the officer that she witnessed suspects run from Mr. Ruggiero's house to a white Buick and drive away. Ms. Shaffer gave the officer the license plate number of the suspects' car.

{¶22} Officer French testified that Mr. Ruggiero was "agitated" and "extremely nervous" when he spoke to him. Mr. Ruggiero showed the officer where he put his .45 caliber handgun after the incident. The officer noticed that the gun had a round in the chamber and a loaded magazine. Mr. Ruggiero admitted firing the gun twice.

{¶23} Officer French testified that Mr. Ruggiero reported the following. He had placed an ad on Craigslist to sell an Xbox, and a prospective buyer came to the house to ensure that the system worked. The prospective buyer told Mr. Ruggiero that his "guys" were coming over because they had the money for the system. The prospective buyer made a phone call. Soon thereafter, the door burst open and three men in hoodies and masks entered. One of the men had a gun which he held to Mr. Ruggiero's head as he ordered him to ground and demanded money. Mr. Ruggiero gave the man $85.00. When the suspect's attention became divided, Mr. Ruggiero pulled out the .45 caliber handgun he had on his person and fired toward the door where the suspects were. The suspects fled.

{¶24} Officer French found two bullet casings near where Mr. Ruggiero said he was kneeling. He also found two bullet holes in the wall near the doorway. In addition, he noticed

that a box on a chair in the living room contained an Xbox. A game controller, which appeared to be wireless, was on the floor. The officer testified that the two witnesses' statements were consistent with his observations.

{¶25} While on the scene, Officer French was dispatched to Barberton Hospital for a reported gunshot wound. When he arrived at the hospital, other officers had two suspects who arrived at the hospital in a white Buick in custody. Officer French placed Culver in his police car and transferred him to the police station, although he did not have any further interaction with him. While still at the hospital, Officer French secured the white Buick and called for a tow truck. He noticed that there was blood in the passenger compartment of the car, consistent with the transport of someone with a gunshot wound.

{¶26} Detective Gary Shadie of the Akron Police Department assisted in the investigation of this matter by responding to Barberton Hospital regarding a report of a male with a gunshot wound to his arm. Detective Shadie spoke with Davis who reported that he had been shot while walking alone near a home in West Akron, although he refused to give the address of the home. After Detective Shadie informed Davis that there had been another incident on the opposite side of Akron in which someone was shot, leaving blood at the scene which would be tested for DNA, Davis changed his story. Davis then admitted that he had been at the home of "a friend of some of his people" to buy "weed" in an area with which he was not familiar. Davis reported that he and the seller argued about the amount of the drugs, and Davis got shot. Davis further told the detective that he then got in his car and began driving when he saw his brother, Culver, walking along the street. Davis stopped the car and Culver got in and drove Davis to the hospital in Barberton. Davis asserted that he and Culver just happened to be in the same area, but they had not been together.

**{¶27}** Detective Shadie testified that Davis admitted that the first story he reported was not true. Davis further admitted that he had been having financial difficulties. Finally, Davis speculated that the victim at the home where he was shot would fabricate an excuse, such as that Davis was there to rob him or hotwire a car, to justify the shooting. Davis told the detective, however, that if he had planned to rob the victim, he would have used the shotgun he had in his car. He denied bringing a weapon into Mr. Ruggiero's home. A search of Davis' car revealed a shotgun, as well as a silver pistol.

**{¶28}** Detective Aaron Hanlon of the Akron Police Department testified that he went to the scene of the reported burglary approximately thirty minutes after the initial call. He spoke with Mr. Ruggiero, whom he described as "amped up, excited, and bouncing off the walls." Mr. Ruggiero explained that he had listed an Xbox for sale, and that "J" arrived and played briefly with the system before making several phone calls while pacing back and forth between the living room and enclosed porch. Mr. Ruggiero reported that "J" (subsequently identified as Culver) told someone on the phone, "Yeah, I like it, I want it. Bring me the money. Come now." Mr. Ruggiero heard a "bang, bang" and three men rushed in, two with hoodies tightened around their faces and one with a black and silver bandanna over his face. The detective testified that Mr. Ruggiero reported that one suspect held a gun on him, forced him to his knees, and demanded whatever he had. Mr. Ruggiero gave the suspect the money in his wallet. When Mr. Ruggiero noticed that the suspect was distracted by the other two men on the porch, he pulled out his own gun and fired two shots. The detective noted that there were shell casings on the floor and two bullet holes in the front door by the porch. Mr. Ruggiero reported that the suspects ran to a white Buick with tinted windows. Detective Hanlon testified that there was an Xbox gaming system on a chair in the living room and a game controller on the floor.

{¶29} Detective Hanlon then went to Barberton Hospital where he spoke with Davis in the emergency room. Davis was evasive and merely stated that he had been shot but did not know where or any other details. Davis did not explain what he had been doing when he was shot. Eventually, Davis requested to speak only to Detective Shadie.

{¶30} Detective Hanlon returned to the police station, where Culver had been transported for questioning. Detective Hanlon read Culver his *Miranda* rights and interviewed him after he agreed to make a statement. The detective described Culver as "laid back, just acting normal." Culver explained that he and his brother (Davis) had arranged to buy marijuana from Mr. Ruggiero through a third party named James. Culver reported that he alone went inside Mr. Ruggiero's house and spoke with him after his brother dropped him off at the house. Culver then called his brother (Davis). Davis arrived and went inside the house, and Culver went outside to smoke. Davis got shot while Culver was outside. The two left together. Culver could not explain why Davis reported to the police that Culver was never at Mr. Ruggiero's house.

{¶31} Detective Hanlon testified that Culver said that he did not buy any marijuana from Mr. Ruggiero because Davis was supposed to buy it. When the detective asked how much money Culver and Davis had to buy marijuana, Culver said he had $1 and Davis had $3 or $4, although Davis was supposed to have $20 or $30 in his car. A search of Davis' car revealed no money in the car. Detective Hanlon testified that, based on his experience as a police officer, $5 was not enough to buy marijuana.

{¶32} The victim's 911 call was made at 6:15 p.m., and the call regarding a gunshot victim at Barberton Hospital was dispatched at 7:00 p.m. Detective Hanlon testified that Culver had no explanation for why Davis went to Barberton for treatment for the gunshot wound, rather than to one of the closer hospitals in Akron, where he was shot.

{¶33} Detective Hanlon obtained a search warrant to search Davis' car based on the witnesses' descriptions, including the license plate number obtained by Ms. Shaffer. In addition, a security video from a machine shop near Mr. Ruggiero's house showed Davis' car parked briefly in the parking lot before leaving shortly before Mr. Ruggiero's 911 call was made. The detective testified that there was blood on the driver's seat, arm rest, and driver's door of Davis' car. He found a silver pistol on top of a black and silver bandanna in the trunk. The bandanna and pistol were wrapped in a shopping bag. There was also a shotgun in the trunk.

{¶34} Detective Hanlon admitted that he did not know how Mr. Ruggiero derived his income or whether the victim had sold other items on Craigslist. He was aware that Davis had told another detective that this incident involved a drug transaction. He was also aware that Ms. Shaffer reported that she saw two people flee from Mr. Ruggiero's home, not three, and that she saw the white car parked on the street, not in a parking lot. Finally, Detective Hanlon testified that several officers investigated on foot, looking a block in every direction from Mr. Ruggiero's house for the third person mentioned by both Mr. Ruggiero and Ms. Shaffer. They were unable to locate a third person in the area.

{¶35} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others. *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22.

{¶36} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Culver. The weight of the evidence supports the conclusion that Culver used deception to trespass into Mr. Ruggiero's house with the purpose to

steal from him. Moreover, the evidence supports the conclusion that Culver had a handgun or, at a minimum, aided his armed brother in robbing Mr. Ruggiero.

{¶37} Culver told Mr. Ruggiero that he was interested in buying the Xbox that Ruggiero had listed for sale on Craigslist. He insisted on meeting inside Mr. Ruggiero's home instead of in a parking lot, purportedly to ensure that the gaming system worked. However, a jury could reasonably have found that this was a pretext to give him entry into the home and the ability to see what was available to steal and whether the situation inside the home made Mr. Ruggiero an easy target. Culver called his brother Davis, who had dropped him off at Mr. Ruggiero's home moments before, giving him the signal to burst into the home, possibly with another accomplice. Mr. Ruggiero saw a silver pistol in Davis' hand, and he saw another of the suspects with a black handgun. A black handgun was found immediately outside Mr. Ruggiero's house in the garden, along a path that Davis and Culver would have taken as they fled the home after Mr. Ruggiero shot Davis. A silver pistol was found in Davis' trunk, along with a black and silver bandanna similar to the bandanna that Mr. Ruggiero reported was worn by one of the suspects. Ms. Shaffer confirmed that two men fled Mr. Ruggiero's home and sped off in a white Buick, the same car the police found at Barberton Hospital and which contained fresh blood consistent with the transportation of someone with a gunshot wound to the arm.

{¶38} The evidence demonstrated that Culver and Davis worked together with the purpose of stealing from Mr. Ruggiero. Davis took money from Mr. Ruggiero, although it is unclear what happened to the money after Culver and Davis fled. Although Mr. Ruggiero called 911 immediately after Culver and Davis fled, and the police arrived shortly thereafter and immediately entered Mr. Ruggiero's home, there was no evidence that they observed any drugs

in his home. They observed and photographed, however, an Xbox and controller in the living room, consistent with Mr. Ruggiero's report that Culver tested the system.

{¶39} Davis was evasive when he spoke to the police after being shot. At first he claimed to have been shot while walking alone near a house across town from Mr. Ruggiero's home. When he realized that the police could trace the blood at Mr. Ruggiero's house to him, Davis changed his story and claimed that he was alone at Mr. Ruggiero's to buy marijuana. He told the detective that Mr. Ruggiero would likely say that he (Davis) was trying to rob him to justify the shooting. Davis claimed that he picked his brother up on the street after the shooting when Culver coincidentally happened to be in the same area that Davis described as unfamiliar. Culver and Davis were alone for almost forty-five minutes as they drove from Akron to Barberton, giving them time to discuss what they would tell the police. A jury could reasonably have found that Culver and Davis concocted the story about buying marijuana from Mr. Ruggiero, a minor offense, in an effort to prevent the police from learning that they planned to rob Mr. Ruggiero after gaining access to his home after Culver posed as a potential buyer of the Xbox listed on Craigslist.

{¶40} Based on this evidence, Culver's convictions for aggravated burglary and aggravated robbery are not against the manifest weight of the evidence. Culver's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT CULVER TO SEVEN YEARS IMPRISONMENT WITHOUT CONSIDERING RELEVANT FACTORS WITH RESPECT TO SENTENCE AND WHERE APPELLANT CULVER HAD NO PRIOR FELONY CONVICTIONS.

{¶41} Culver argues that the trial court erred in its imposition of sentences for aggravated burglary and aggravated robbery. This Court agrees.

**{¶42}** This Court applies a two-step approach in reviewing criminal sentences: "The first step is to determine whether the sentence is contrary to law. The second step is to determine whether the court exercised proper discretion in imposing the term of imprisonment." *State v. Smith*, 9th Dist. No. 11CA0115-M, 2012-Ohio-2558, ¶ 3, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4, 26.

**{¶43}** Here, the sentencing court inquired as to whether the parties believed that the two offenses were allied offenses of similar import. The assistant prosecutor conceded that they were. The sentencing court then explained to Culver that "for purposes of sentencing, these offenses merge, although, you have been convicted of separate felonies of the first degree." The lower court did not inquire of the State which offense it elected for purposes of sentencing. At the sentencing hearing, the court merely sentenced Culver "to seven years at the Lorain Correctional Facility" without indicating for which offense it was imposing sentence. In its sentencing entry, however, the sentencing court sentenced Culver to a definite term of seven years for each of the two offenses. It further ordered that "the sentences imposed in Counts 1 and 2 be MERGED for sentencing purposes" for "a total of 7 years in the Ohio Department of Rehabilitation and Correction." After Culver pleaded guilty to the remaining charge and specification, the trial court issued another sentencing entry addressing all charges in the two indictments. With regard to the two charges at issue in this appeal, the trial court wrote: "The Court finds that Counts 1 and 2 of the Indictment were merged for sentencing purposes, and on June 6, 2012, the Defendant was sentenced to the Ohio Department of Rehabilitation and Correction for a definite period of 7 years." The second judgment entry of conviction did not indicate which count was merged into the other, and presumably referred to the individual sentences for each count. Therefore, although the sentencing court might have intended to merge

one count into the other, it effectively merely ran Culver's two independent seven-year sentences for aggravated burglary and aggravated robbery concurrently.

{¶44} This Court recognizes that the "[f]ailure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because 'a defendant is prejudiced by having more convictions than are authorized by law.'" *State v. Austin*, 9th Dist. Summit No. 26385, 2013-Ohio-1159, ¶ 28, quoting *State v. Asefi*, 9th Dist. Summit No. 26430, 2012-Ohio-6101, ¶ 6, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31. Because the trial court did not in reality merge the counts of aggravated burglary and aggravated robbery, but rather effectively ordered them to run concurrently, Culver's sentence is contrary to law. Accordingly, this matter must be remanded to the trial court for resentencing and to allow the State "the opportunity to elect the offense[] upon which it wishes to proceed to sentencing." *Austin* at ¶ 29, quoting *Asefi* at ¶ 8, quoting *State v. Ziemba*, 9th Dist. Summit No. 25886, 2012-Ohio-1717, ¶ 23. Culver's second assignment of error is sustained solely on the basis that this matter must be remanded, consistent with the foregoing discussion.

{¶45} Because this Court concludes that Culver's sentence is contrary to law, we do not determine whether the trial court abused its discretion in imposing a sentence of seven years, as that matter is not yet ripe for review.

III.

{¶46} Culver's first assignment of error is overruled. His second assignment of error is sustained and the matter is remanded for resentencing upon the State's election of the offense upon which it wishes to proceed to sentencing. Accordingly, the judgment of the Summit

County Court of Common Pleas is affirmed in part, reversed in part, and remanded for the limited purpose articulated in this opinion.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.