[Cite as *State v. Pangburn*, 2016-Ohio-3286.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-11-095 |
| | : | O P I N I O N |
| - vs - | | 6/6/2016 |
| | : | |
| RANDALL A.C. PANGBURN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015 CR 00226

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Randall A.C. Pangburn, appeals from his conviction and sentence in the Clermont County Court of Common Pleas for receiving stolen property and misuse of a credit card.

{¶ 2} Sometime between 1:40 a.m. and 8:40 a.m. on March 17, 2015, a safe containing a Discover credit card and other valuables belonging to 71-year-old Nina Pittillo

was stolen from Pittillo's home in Amelia, Ohio. Pittillo contacted law enforcement on March 17, 2015, after discovering the theft. Chris Allen, an investigator with the Clermont County Sheriff's Office, was assigned to investigate the crime.

{¶ 3} On March 18, 2015, Pittillo was contacted by her credit card company after the stolen Discover card was used at a Meijer store. Pittillo informed Allen of the purchase, and Allen contacted the Meijer store, located on Eastgate North Drive in Cincinnati, Clermont County, Ohio, to obtain information about the transaction. Allen spoke with Terry Derossett, an asset protection employee, who was able to provide security surveillance footage and a transaction log detailing the purchase made with the Discover card. This information revealed that Pittillo's Discover credit card had been used on March 18, 2015, at 10:24 a.m. to purchase a $100 prepaid MasterCard.

{¶ 4} Photographs taken from the store's surveillance footage showed that at 10:24 a.m. on March 18, 2015, two males, one wearing a blue coat and one wearing a dark coat, were standing at a self-check-out kiosk. The men were then shown exiting the Meijer immediately thereafter, with the man in the dark coat holding a small plastic bag and receipt. After Allen posted pictures of the two men on the sheriff's office's Facebook webpage, the two men were identified. Appellant was identified as the man in the dark coat, and his stepfather, Eric Jasper, was identified as the man in the blue coat.

{¶ 5} Upon obtaining appellant's identity, Allen spoke with appellant and explained he was investigating the theft of a safe that contained a Discover credit card, which had been used at Meijer. Appellant indicated he was aware of what Allen was referring to and, after being shown photographs of himself and his stepfather at Meijer, admitted to using Pittillo's Discover card at the store. Appellant told Allen he had found the credit card the morning of March 18, 2015, on the ground in the parking lot of the apartment complex where his mother and stepfather lived in Batavia, Ohio. Appellant stated he was homeless and had used the

- 2 -

Discover card to purchase a prepaid $100 MasterCard because he was hungry and needed food. Appellant admitted he knew it was wrong to have used the Discover card because his name was not on it. Appellant also remarked he was surprised the credit card had worked when he used it at Meijer. Appellant told Allen he discarded the Discover card in a garbage can outside Meijer as he exited the store.

{¶ 6} On April 23, 2015, appellant was indicted on one count of receiving stolen property in violation of R.C. 2913.51, a felony of the fifth degree as the property involved was a credit card. Appellant was also indicted on one count of misuse of a credit card in violation of R.C. 2913.21(B)(2), a felony of the fifth degree as the victim of the offense was elderly. Appellant entered a not guilty plea to the charges, and a bench trial was held on August 10, 2015.

{¶ 7} Prior to the start of trial, the parties entered into a stipulation that "[t]he credit card belonging to * * * Pittillo was obtained through a theft offense. There is no evidence linking [appellant] to that theft offense, nor alleging [appellant] participated in the theft of * * * Pittillo's credit card." Thereafter, the state presented testimony from Pittillo, Allen, and Derossett and entered into evidence the photographs obtained from Meijer's surveillance footage. Following the state's presentation of its evidence, appellant made a Crim.R. 29 motion for acquittal on the receiving stolen property charge, which was denied by the trial court. Thereafter, appellant rested his defense without calling any witnesses or admitting any exhibits into evidence. The matter was submitted to the court, who issued an opinion on September 14, 2015, finding appellant guilty of receiving stolen property and misuse of a credit card. Appellant was sentenced on October 19, 2015, to three years of community control sanctions and was advised that a violation of his community control could result in a 24-month prison term, consisting of prison terms of 12 months on each count, served consecutively.

{¶ 8} Appellant timely appealed his conviction and sentence, raising three assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] BY FAILING TO GRANT [APPELLANT'S] CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.

{¶ 11} In his first assignment of error, appellant challenges the sufficiency of the evidence for his conviction for receiving stolen property. Appellant contends his conviction for this offense should be reversed as the state failed to introduce any evidence that he knew or had reasonable cause to believe Pittillo's Discover card had been obtained through the commission of a theft offense.

{¶ 12} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶ 13} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. No. CA2011-10-

026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "To reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph three of the syllabus.

{¶ 14} Appellant was convicted of receiving stolen property in violation of R.C. 2913.51(A), which provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." As alleged in the indictment, receiving stolen property is a fifth-degree felony if it involves a credit card. R.C. 291351(C) and 2913.71(A). Appellant does not dispute that he retained and disposed of Pittillo's Discover credit card, but argues that the state failed to present evidence demonstrating he knew or had reasonable cause to believe that the credit card had been obtained through commission of a theft offense. He contends he, "at no time, had reason to believe that as it lay in the parking lot (or anytime thereafter), the credit card had come there by way of a theft offense."

{¶ 15} R.C. 2901.22(B) provides that "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "Absent an admission by a defendant, the question of whether the defendant had reasonable cause to believe an item was stolen can only be proved by circumstantial evidence." *State v. Rivera*, 12th Dist. Butler No. CA2012-11-220, 2013-Ohio-3203, ¶ 9. *See also State v. Emery*, 6th Dist. Lucas No. L-11-1228, 2013-Ohio-208, ¶ 18 ("When a disputed element of an offense is not susceptible of proof by direct evidence, circumstantial evidence may be used to provide an inference of guilt"). "[O]ne has 'reasonable cause to believe' property was

obtained through a theft offense when, after putting oneself in the position of this defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense." (Internal quotations omitted.) *State v. Collins*, 10th Dist. Franklin No. 11AP-130, 2012-Ohio-372, ¶ 12. In the prosecution for receiving stolen property, the trier of fact "may infer guilty knowledge when the defendant's possession of recently stolen property either goes unexplained or is not satisfactorily explained in the context of the surrounding circumstances, as shown by the evidence." *Emery* at ¶ 18, citing *State v. Arthur*, 42 Ohio St.2d 67, 68-69. *See also Rivera* at ¶ 11.

{¶ 16} In determining whether the trier of fact could circumstantially conclude, beyond a reasonable doubt, that the defendant knew or had reasonable cause to believe the property he received, retained, or disposed of was stolen, courts have identified several relevant considerations. These include: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and recovery of the merchandise." *State v. Davis*, 49 Ohio App.3d 109, 112 (8th Dist.1988). *See also Rivera*, 2013-Ohio-3203 at ¶ 10.

{¶ 17} In viewing the evidence presented in a light most favorable to the prosecution, we find the record contains insufficient evidence proving appellant knew or had reasonable cause to believe that the Discover credit card had been obtained through the commission of a theft offense. Looking at the circumstances surrounding appellant's possession of the credit card, we conclude the state failed to present evidence from which the trier of fact could infer that appellant knew or should have reasonably believed the Discover credit card had been stolen, rather than lost.

{¶ 18} The state presented evidence that the credit card was stolen from Pittillo's home in Amelia, Ohio sometime between 1:40 a.m. and 8:40 a.m. on March 17, 2015. Appellant used the Discover card more than 24-hours later at a Meijer store. According to appellant's statement to Investigator Allen, appellant found the credit card on the ground of an apartment complex in Batavia, Ohio shortly before using the card at Meijer on March 18, 2015. Appellant was surprised the credit card worked, and he stated he knew it was wrong to have used the Discover card because his name was not on it.

{¶ 19} The foregoing evidence does not prove beyond a reasonable doubt that appellant knew or had reasonable cause to believe that Pittillo's credit card was stolen property. Appellant's possession of the Discover card is insufficient to establish knowledge or a reasonable belief that the card had been obtained through a theft offense. The state stipulated that there was "no evidence linking [appellant] to the theft offense, nor alleging [appellant] participated in the theft" of the credit card. Although credit cards are very valuable in nature and are common targets for theft, there is nothing in the record demonstrating appellant had reason to believe Pittillo's credit card ended up in the parking lot of the apartment complex as a result of a theft offense. Rather, from the evidence presented at trial, appellant believed the Discover card ended up on the ground of the apartment complex as a result of being lost or dropped by its rightful owner.

{¶ 20} Under the circumstances of this case, appellant's explained possession of the Discover credit card was reasonable and, as the trial court noted, entirely plausible. The credit card was found in a parking lot, a location where individuals frequently traverse and where a credit card could easily be dropped.[1] The state did not present any evidence

---

1. The trial court found that a parking lot is not a place where an owner would have simply dropped a credit card. The court stated, "finding the credit card in a parking lot is significantly different from finding the card in a retail store at or around the checkout point, where customers are routinely opening their wallets and purses to retrieve a credit card or cash, and were it is more plausible that a credit card could have simply been dropped accidently from one's purse or wallet at that time." We disagree that a parking lot is an unlikely place for a credit card to be

demonstrating appellant should have known that a thief dropped the credit card in the parking lot. Rather, given that the credit card was lying in a parking lot by itself, as opposed to with a discarded wallet or purse, it was entirely plausible for appellant to believe the owner of the Discover card merely dropped the card in the parking lot.

{¶ 21} Appellant's statements to Investigator Allen that he was surprised the credit card worked at Meijer and that he knew it was wrong to have used the Discover card because his name was not on it do not create an inference that appellant knew or had reasonable cause to believe the credit card had been stolen. A cardholder frequently cancels his or her credit card when the cardholder discovers the card is no longer in his or her possession, regardless of whether the card had been stolen or lost. Additionally, the fact that the Discover credit card contained a name other than that of appellant does not mean that the card was stolen. A cardholder's name remains on a credit card regardless of whether it has been lost or stolen. Therefore, for the reasons expressed above, we conclude the state failed to present evidence that the circumstances surrounding appellant's receipt and retention of the Discover card established appellant knew or had reasonable cause to believe that the credit card had been obtained through the commission of a theft offense.

{¶ 22} We further find that the state failed to demonstrate appellant disposed of the Discover credit card knowing or having reasonable cause to believe that the card had been obtained through the commission of a theft offense. In finding appellant guilty of receiving stolen property, the trial court stated, "even if [appellant] initially believed the Discover credit card was lost and not stolen, by the time he exited the Meijer store with his merchandise in hand, his behavior certainly suggested that he knew or had reason to believe that the

---

dropped. The credit card could have easily fallen out of a resident's pocket or an open purse and onto the ground as the resident walked to or from the apartment complex. If the card had been found in a location where people do not frequently traverse, such as an open field, or been found in a concealed location, such as a dumpster, the circumstances would be of a nature to suggest that the card had probably been stolen.

Discover card was stolen." It appears the trial court tried to attribute appellant's use and disposal of the credit card as proof that appellant knew the Discover credit card had been obtained from a theft offense. While it is true that a defendant may be found guilty of receiving stolen property if the defendant, originally unaware that the property had been stolen at the time he received the property, later learns the true nature of the stolen property and either retains the property or disposes of it, there is no evidence in the record demonstrating that appellant learned the Discover card had been stolen. *See, e.g., State v. Ready*, 143 Ohio App.3d 748, 760-761 (11th Dist.2001). Appellant disposed of the credit card after misusing the card to purchase a $100 MasterCard. Under the circumstances of this case, appellant's actions are not evidence that appellant learned or otherwise knew that the Discover credit card had been obtained through the commission of a theft offense. Rather, appellant's actions are consistent with and attributable to his efforts to conceal his unlawful use of another's credit card.

{¶ 23} In convicting appellant of receiving stolen property, the trial court found the fact that appellant had not called any witnesses or presented any other evidence in corroboration of his claim that he found the Discover credit card on the ground in a parking lot and believed it lost to be problematic and circumstantial evidence that appellant knew or had reason to believe that the card was stolen. While the trial court, as the trier of fact, was certainly entitled to consider appellant's explanation for his possession of the Discover credit card, the court could not shift the burden of proof to appellant to establish his innocence on the knowledge element of the receiving stolen property offense. The burden was on the state to prove every essential element of the receiving stolen property charge, which included proving that appellant knew or had reasonable cause to believe the Discover credit card had been obtained through the commission of a theft offense.

{¶ 24} Given the evidence presented by the state, we conclude that the circumstances

surrounding appellant's receipt, retention, and disposal of the Discover credit card are insufficient to prove beyond a reasonable doubt that appellant knew or had reasonable cause to believe that the found Discover credit card had been obtained through the commission of a theft offense. The state failed to present evidence permitting an inference of knowledge or reasonable cause to believe that the Discover credit card had been obtained through the commission of a theft offense.

{¶ 25} In concluding that there was insufficient evidence to convict appellant of receiving stolen property, we find the present case distinguishable from our decision in *State v. Rivera*, 2013-Ohio-3203; and the Sixth District Court of Appeals' decision in *State v. Emery*, 2013-Ohio-208. In both of those cases, the respective defendants had been present at the location where the underlying theft had occurred and neither of the defendants had a reasonable explanation for why they were in possession of the stolen property. An inference of knowledge or reasonable cause to believe that the underlying property had been obtained through the commission of a theft offense was, therefore, permissible and proper under the facts of those cases.

{¶ 26} The defendant in *Rivera* was found in possession of an iPhone a few hours after it had been reported stolen from a bar where both the defendant and the victim had been present. *Rivera* at ¶ 12. In finding sufficient evidence to infer that the defendant knew or had reasonable cause to believe the iPhone had been stolen, we found the defendant's explanation that he found the iPhone on the floor of the bar and kept it with the intention of returning it to its owner "patently unreasonable and not credible." *Id.* There, the defendant could not explain to law enforcement how he intended to contact the owner of the phone or why he had not taken the phone to the police department located across the street from the bar or given it to some other authority figure at the bar. *Id.*

{¶ 27} Similarly, in *Emery*, the Sixth District found the defendant's explanation for his

possession of stolen aluminum chucks to be "utter[ly] weak[.]" *Emery* at ¶ 21. There, stolen chucks were found scattered around the defendant's yard the day after the chucks were reported missing from a local business. *Id.* at ¶ 5-6. The defendant had been discovered on the business's property by an off duty officer on the day the theft was reported. *Id.* at ¶ 2-3. The defendant explained his presence on the property by stating to the off-duty officer that he was "just using the bathroom" and was "leaving right away." *Id.* at ¶ 3. The off-duty officer found the defendant's behavior suspicious, and he felt that the defendant might have been stealing scrap metal from the business. *Id.* at ¶ 4. The off-duty officer noted the license plate number of the vehicle the defendant was driving and contacted local law enforcement. *Id.* Local law enforcement responded to the scene and noticed there was no "yellow snow" or other telltale trace of anyone having "used the facilities," there were fresh footprints and tire tracks around a basket that was used to hold chucks, and the basket used to hold the chucks was empty. *Id.* at ¶ 5. Using the license plate number on the car the defendant was driving, the police were able to obtain the defendant's identity. *Id.* at ¶ 6.

{¶ 28} When confronted about the chucks found on his property, the defendant denied knowing how the chucks got on his property. *Id.* at ¶ 9. The defendant told officers that he was a sculptor and people often left materials at his house. *Id.* In finding sufficient evidence to infer that the defendant knew or had reasonable cause to believe the chucks had been stolen, the Sixth District concluded appellant's statement that unknown persons routinely dropped materials off at his house for artistic use was utterly unreasonable. *Id.* at ¶ 21. The court noted that the defendant's explanation did not "indicate when the chucks arrived, how they were transported, or the identity of the person or persons involved." *Id.* at ¶ 21. The defendant's failure to reasonably explain his possession of the property, in combination with the off-duty officer's identification testimony and the license plate number matching a vehicle owned by the defendant's wife, provided sufficient evidence for the trier of fact to conclude

that appellant retained the property of another knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. *Id.* at ¶ 22.

{¶ 29} Unlike the defendants in *Rivera* and *Emery*, there was no evidence presented by the state tying appellant to the location of the underlying theft offense. In fact, here the state stipulated there was no evidence linking appellant to the theft of Pittillo's Discover credit card from her safe in Amelia, Ohio. Additionally, unlike the defendants in *Rivera* and *Emery*, appellant had a plausible and reasonable explanation for his possession of the Discover card. Appellant identified how, when, and where he became in possession of the credit card. Appellant explained he found the card on the morning of March 18, 2015, in the parking lot of an apartment complex in Batavia, Ohio, and he kept the card so that he could purchase a prepaid credit card to buy food. Investigator Allen admitted on cross-examination that there was no evidence to refute appellant's explanation about how he came into possession of the Discover credit card. Under these facts, an inference cannot be made that appellant knew or had reasonable cause to believe that the Discover credit card had been obtained through the commission of a theft offense.

{¶ 30} Accordingly, for the reasons set forth above, we find the trial court erred in convicting appellant of receiving stolen property. After viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could not have found all of the essential elements of the offense proven beyond a reasonable doubt. Appellant's first assignment of error is, therefore, sustained.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED IN SENTENCING APPELLANT ON BOTH THE RECEIVING STOLEN PROPERTY AND MISUSE OF A CREDIT CARD COUNTS AS THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 35} In his second assignment of error, appellant argues his conviction for receiving stolen property was against the manifest weight of the evidence. In his third assignment of error, appellant argues his convictions for receiving stolen property and misuse of a credit card are allied offenses of similar import. Given our disposition of appellant's first assignment of error, we find appellant's second and third assignments of error to be rendered moot.

{¶ 36} Appellant's conviction and sentence for receiving stolen property is reversed, and appellant is discharged as to this specific count. In all other respects, the judgment of the trial court is affirmed.

{¶ 37} Judgment affirmed in part, reversed in part, and appellant discharged on his conviction for receiving stolen property.

M. POWELL, P.J., and PIPER, J., concur.