[Cite as *State v. Bennett*, 2020-Ohio-652.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190181 |
| | | TRIAL NO. 18CRB-25618 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JASON BENNETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 26, 2020

*Paula Boggs Muething,* City Solicitor, *Natalia Harris*, City Prosecutor, and *Jon Vogt*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

CROUSE, Judge.

{¶1} Defendant-appellant Jason Bennett appeals his conviction for aggravated menacing. For the reasons set forth below, we affirm the judgment of the trial court.

### Facts and Procedure

{¶2} In the early morning hours of September 27, 2018, Jason Bennett, Charles Basham, Lacey Patterson, and Joe Patterson went to a couple of bars. All were drinking. Bennett drank six beers and a couple of shots throughout the night. They eventually left the bars and went to the Pattersons' house.

{¶3} Atiya Hampton, the Pattersons' neighbor, testified that Bennett and Basham were in the Pattersons' backyard "being very loud." The noise twice woke her up—once around 4:00 a.m. and again around 5:00 a.m. After the second instance, Hampton went outside and confronted Bennett and Basham. They responded by calling her racial slurs, specifically "it's you again, black bitch." Mere moments later, Basham hopped the fence between the neighboring properties and "fell and busted his head."

{¶4} Hampton testified that, at that point, Bennett came out of the house and ran toward her with a knife. Hampton described the knife as "a nice little pocket knife." She further stated, "How dark it was and the light, you can't really see, but I know it was a knife. You could see the knife, like a butterfly knife." As Bennett ran toward Hampton, he said, "I'm going to kill you, black bitch."

{¶5} Hampton testified that she ran backwards up her front steps, onto the porch, and into the house, shutting the screen door in front of her. Bennett followed her up the steps to the door. Hampton asked Bennett, "You trying to stab me?"

2

Bennett then ran down the steps and dragged Basham back into the Pattersons' house. Hampton called 911.

{¶6} Officer Kevin Holmes testified that when he arrived on the scene everyone was "very highly intoxicated." Holmes did not smell any alcohol or see any evidence of drinking. However, Bennett admitted that they had been drinking all night and, according to Holmes, Bennett's story "kept changing a little bit." Based on these circumstances, Holmes arrested Bennett. Holmes did not find a knife either at the scene or on Bennett.

{¶7} Bennett testified in his defense. Bennett stated that he and Basham went outside to smoke a cigarette. After a few seconds, Hampton started racing towards them and screaming racial slurs. Provoked by Hampton's harassment, Basham jumped the fence. Bennett stepped onto a cooler, looked over the fence, and saw Basham unconscious. Bennett then exited from the Pattersons' property through the garage and dragged Basham into the house. Bennett first made contact with the police when they knocked on the Pattersons' front door.

{¶8} Based on the evidence presented at trial, the court found Bennett guilty of aggravated menacing and sentenced him to 180 days' incarceration with 150 days suspended, one year of probation, and a fine of $100. Bennett timely filed this appeal, raising two assignments of error for our review.

### *Law and Analysis*

### I. Manifest Weight of the Evidence

{¶9} In his first assignment of error, Bennett challenges the weight of the evidence supporting his conviction for aggravated menacing. Specifically, Bennett challenges the credibility of Hampton and Holmes.

{¶10} In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶11} Bennett was convicted of aggravated menacing pursuant to R.C. 2903.21(A), which provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person * * * or a member of the other person's immediate family." The record reflects two different versions of events. Hampton testified that when she confronted Bennett and Basham they called her racial slurs and charged at her—Bennett charging at her with a knife in hand. Although Bennett admitted that Basham jumped the fence into Hampton's property and that he dragged Basham back onto the Pattersons' property, he denied running toward Hampton with a knife.

{¶12} "The trier of fact may believe all, part or none of [a] witness's testimony. * * * And when evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." (Internal citations omitted.) *In re J.C.*, 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20. Ultimately, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶13} In rendering its judgment, the trial court found the testimony of Hampton to be more credible than that of Bennett. The court expressly stated that the defense witnesses were "unreliable" because they "were all in some state of intoxication." Based upon the conflicting testimony, and in light of the entire record

4

and credibility of the witnesses, this is not a case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Bennett's conviction must be reversed.

{¶14} Bennett's first assignment of error is overruled.

## II. Evidentiary Issues

{¶15} In his second assignment of error, Bennett argues that the trial court erred in two evidentiary matters: (1) the trial court denied his right to confront witnesses when it precluded certain cross-examination of Hampton, and (2) the trial court erred in excluding certain direct-examination of Basham.

### a. Cross-examination of Hampton

Both the Ohio Constitution and the United States Constitution guarantee a defendant the right to confront witnesses against him. *See* Ohio Constitution, Article I, Section 10; Sixth Amendment to the U.S. Constitution. But this protection "guarantees only 'an *opportunity* for effective cross-examination.' " (Emphasis in original.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 83, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Therefore, to establish a Confrontation Clause violation, the defendant must show that he was "prohibited from engaging in otherwise appropriate cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). If the trial court allowed limited cross-examination, then the extent of that cross-examination is within the sound discretion of the trial court. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 172.

{¶16} At trial, Bennett tried to discredit Hampton's testimony by demonstrating her bias, prejudice, and/or motive to lie. *See* Evid.R. 616(A) ("Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by

examination of the witness or by extrinsic evidence."). Bennett alleged that Hampton had a motive to fabricate the allegations in this case, in part, because of a prior altercation between the Pattersons and her. On cross-examination of Hampton, defense counsel attempted to elicit testimony about the altercation. The following exchange occurred:

> Defense counsel: Now, you mentioned that you did have some issues with the neighbors regarding parking?
>
> Hampton: The resident who lived there.
>
> Defense counsel: Okay. Now, this parking spot, am I correct in saying—
>
> Hampton: No, you are not. It's not a parking lot. This is a public street.
>
> Defense counsel: Did I ask you a question before that?
>
> Court: All right, just a minute. Okay? First of all, I want to know what happened on this day. I'm really not interested in what happened a week ago or two weeks before that. So let's concentrate on what happened this night or early in the morning.
>
> Defense counsel: I understand, Your Honor. My only reasoning being when she was being examined by the prosecutor—
>
> Court: I understand that. I'm telling you what I'm concentrating on.
>
> Defense counsel: I'm just trying to show motive that led up to it.

Defense counsel did not further pursue the line of questioning.

{¶17} Based on this dialogue, we cannot say that the trial court prohibited Bennett from engaging in cross-examination. The court did interrupt the flow of cross-examination, cautioning against a narration of the prior altercation. The court also

6

urged defense counsel to concentrate on the morning of September 27, 2018. Despite these recommendations, however, there is nothing in the record to demonstrate that the court would not permit defense counsel to delve further down his line of questioning. For example, the state did not object to defense counsel's inquiry, the court did not definitively rule on the issue, and the court did not strike any testimony or questions from the record.

{¶18} Even if we were to find that the trial court effectively limited Bennett's cross-examination of Hampton, such limitation did not amount to an abuse of discretion. The prior altercation did not concern Bennett, and thus, had minimal relevancy to this case. Hampton admitted to a prior altercation with the Pattersons, and as described in more detail below, Basham alluded to also having a prior altercation with Hampton. However, Hampton testified that she had "never even seen this Jason Bennett until that morning" and "[t]hat was the first time we actually had like an incident with [Bennett]." Bennett did not dispute this assertion.

{¶19} In addition, the court heard other testimony of Hampton's motive to lie. On direct-examination, Hampton testified that she and the Pattersons "had a parking problem." Hampton further explained,

> [T]hey were threatening me prior to this, the day they arrived, about the cars. The problem is with me and [the Pattersons] is about the cars. So the cars have been – he has four or five cars which I understand is a public street. I have asked these men numerous times is this your car because it's parked in front of my house and I have no where to park, and they politely said no. So I called the district to see what could I do as far as move these cars.

Officer Holmes also testified that during his investigation, he learned of a prior parking altercation between Hampton and the Pattersons. Specifically, Holmes stated, "I know there – yeah, they mentioned one. I don't know if it was the previous day or couple days before, but, yes, over a parking spot or something."

{¶20} Under these circumstances, the trial court did not deny Bennett the right to confront Hampton.

b. Direct-examination of Basham

{¶21} Under Evid.R. 616(A), bias, prejudice, interest, or any motive to misrepresent may be shown to impeach a witness. However, the admission of evidence is within the sound discretion of the trial court. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 61. An appellate court will not disturb a trial court's ruling on an evidentiary issue absent an abuse of discretion and proof of material prejudice. *Id.*

{¶22} At trial, Bennett alleged that Hampton had a motive to fabricate the allegations in this case, in part, because of a prior altercation between Basham and her. On direct-examination of Basham, defense counsel tried to elicit testimony regarding the altercation. The following exchange occurred:

Defense counsel: Now, have you had any interaction with the prosecuting witness?

Basham: Yes, from the night before that incident.

Defense counsel: Okay. Was she happy or unhappy with you?

Basham: Very upset. I unknowingly parked in front of her house, and she came out and --

Prosecutor: Objection, Your Honor.

Court: Objection sustained.

8

Defense counsel did not proffer the excluded testimony.

{¶23} "In most cases, the lack of a proffer would preclude the court from determining the significance of the excluded testimony." *State v. Twyford*, 94 Ohio St.3d 340, 353, 763 N.E.2d 122 (2002); *see* Evid.R. 103(A) ("Error may not be predicated upon a ruling which * * * excludes evidence unless * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."). However, from the context of the entire record, it is apparent that Bennett intended to establish Hampton's motive to lie based on a prior parking altercation.

{¶24} Nonetheless, Bennett can prove neither an abuse of discretion nor proof of material prejudice. As stated above, the prior altercation had minimal relevancy to the allegations against Bennett, and the court heard other testimony of Hampton's motive to lie. Therefore, the trial court did not err in excluding direct-examination of Basham on that issue.

{¶25} Bennett's second assignment of error is overruled.

### Conclusion

{¶26} For the foregoing reasons, Bennett's assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.