[Cite as *In re J.G.*, 2024-Ohio-2423.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: J.G. | : | APPEAL NOS. C-230612 |
|  |  | C-230613 |
|  |  | C-230614 |
|  | : | TRIAL NOS. 23-1747-02X |
|  |  | 23-1747-04X |
|  | : | 23-2155-01X |
|  |  |  |
|  | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: June 26, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Margaret Kane*, Assistant Public Defender, for Appellant J.G.

**CROUSE, Judge.**

**{¶1}** Appellant J.G. appeals from the trial court's judgments adjudicating him delinquent for acts that would constitute the offenses of failure to stop after an accident, receiving stolen property, and failure to comply if committed by an adult. In a single assignment of error, J.G. challenges the manifest weight of the evidence supporting his adjudications. Finding his argument to be without merit, we overrule his assignment of error and affirm his delinquency adjudications.

## I. Factual and Procedural Background

**{¶2}** While on routine patrol, a Hamilton County sheriff's patrol officer spotted a car that was reported to be stolen. Four people were in the car. When the officer attempted to stop the car, the driver failed to comply and drove off at a high rate of speed. The officer pursued, and the car ultimately crashed into a guardrail. Three of the passengers exited the car, ignored the officer's commands to stop, and fled on foot through nearby woods. One of the fleeing passengers—J.G.—was apprehended shortly thereafter in a nearby park. The other two were never caught.

**{¶3}** For his role in these offenses, complaints were filed against J.G. in juvenile court for failure to stop after an accident in violation of R.C. 4549.02, a first-degree misdemeanor if committed by an adult; receiving stolen property in violation of R.C. 2913.51, a fourth-degree felony if committed by an adult; and failure to comply in violation of R.C. 2921.331(B) and (C), a third-degree felony if committed by an adult. A trial was held before a juvenile court magistrate.

**{¶4}** Michelle Allen testified that she owns a 2011 white four-door Buick Regal that was stolen from her home on June 15, 2023.

{¶5} Officer Cody Collins, a patrol officer with the Hamilton County Sheriff's Office, testified that while on patrol on June 16, 2023, he saw a car matching the description of Allen's car that was reported stolen. After confirming that the license plate matched that of the stolen car, Officer Collins attempted to stop the car. The driver of the car failed to comply, increased speed, and drove left of center. The car eventually approached a sharp right-hand turn that the driver was unable to maneuver, and it crashed into a guardrail.

{¶6} Officer Collins testified that after the car crashed, he saw three male occupants jump out of the front driver's side door and enter a wooded area on the side of the road. Officer Collins gave a verbal command for the occupants to stop. One paused momentarily, but all three ultimately entered the woods. A fourth person, H.D., had also been in the car, but she remained at the scene and did not attempt to flee.

{¶7} Officer Collins testified that he broadcast a description of the three fleeing persons on his radio. He initially radioed that the driver of the car was wearing a gray hoodie and black pants. A few minutes later, he broadcast that the driver was wearing a gray sweatshirt with no hood, dark pants, and a black knit cap/hat. Officer Collins testified that he now believed J.G. was the driver of the car even though J.G. was not wearing a gray sweatshirt, dark pants, or a knit cap when he was stopped shortly after the accident. He explained that after viewing the video from his body-worn camera ("BWC"), he was able to determine which person was the driver based on the way the three occupants exited the car. Officer Collins stated that he believed all three male occupants exited from the driver's door of the car because that was the only door that was open when he arrived on the scene. As such, he explained that even

3

though he did not see which occupant exited the car first, he reasoned that the driver necessarily exited first because the remaining occupants would otherwise have been blocked and unable to exit. According to Officer Collins, the BWC showed that the first person to exit the car was wearing a white shirt and acid-washed or blue jeans, which is what J.G. was wearing when he was apprehended.

{¶8}   Officer Collins's BWC was admitted at trial. A clip from the BWC depicting the passengers exiting the car was played at trial. After watching the clip, Officer Collins stated, "I can see one individual exiting already first, who was wearing a white t-shirt, there appears another individual wearing all black, so I see two at this moment." Officer Collins then explained that the BWC depicted a third individual exit the car wearing a gray sweatshirt and black jeans or sweatpants.

{¶9}   Officer Matthew Marksberry testified that he responded to Officer Collins's radio call regarding the stolen car. After learning that three of the passengers had fled into the woods, Officer Marksberry drove to a nearby park where he believed the woods led. He testified that he encountered J.G. at the park and that J.G. matched a description of one of the suspects. J.G. was sweating profusely. Officer Marksberry was suspicious of J.G., who told the officer that he was playing football at the park with his cousins, yet none of J.G.'s cousins were present. J.G. was wearing lighter, white-washed jeans, and did not have any shoes on. He was not wearing a shirt, but had a white t-shirt stuffed into his pants. Officer Marksberry detained J.G., read J.G. his *Miranda* rights, and transported him to the scene of the crash.

{¶10}   The state presented testimony from H.D., who was the fourth passenger in the car and the only one that remained at the scene after the crash. H.D. testified that on the day of this incident, she had been in a car with an individual that she

4

identified as J.G. and "two other dudes." She stated that J.G. drove the car. According to H.D., she only knew one of the other passengers, an individual that she identified as D. H.D. testified that she and D. were seated in the back seat of the car.

{¶11} During the trial, H.D. was asked to identify J.G. by describing his clothing. She stated, "kind of a blue t-shirt and some black—some black shoes with the little Air Max on, and I don't know what kind of pants he was wearing." This description was not what J.G. was wearing at the trial, and seemed to be a description of what H.D. thought he was wearing on the day of the offenses. The trial court then redirected H.D. to describe the attire that J.G. was wearing at the trial.

{¶12} H.D. agreed on cross-examination that she was more cooperative with the police after they told her that she could be charged with complicity. Officer Collins's BWC captured his on-scene questioning of H.D. while she was seated in the back seat of his patrol car. Inexplicably, a portion of the BWC contains no sound and appears to have been muted. During this muted portion of the BWC, Officer Collins sat in the front seat of his patrol car while H.D. remained in the back. We are unable to determine if any conversation or questioning occurred between Officer Collins and H.D. during this period of time.

{¶13} J.G. elected to testify. He stated that on the day of these offenses, his friend E. picked him up in the white Buick. J.G. stated that he was initially unaware that the car was stolen. But he later suspected as much when E. refused to comply with Officer Collins's attempts to stop the car. According to J.G., he had been seated in the back of the car behind the driver. After the car crashed, he exited through the back door and hopped over the guardrail. J.G. testified that he ran after seeing an officer

5

because he had recently been released from jail and feared being incarcerated again. He further testified that E. was wearing a gray sweater, black pants, and white shoes.

{¶14} The magistrate adjudicated J.G. delinquent of all three offenses. J.G. filed objections to the magistrate's decision. He argued that the magistrate erred in finding that he was not a credible witness and that the state failed to prove all elements of the charged offenses beyond a reasonable doubt. The trial court overruled J.G.'s objections and entered a dispositional order that committed J.G. to the legal custody of the Ohio Department of Youth Services.

## II. Manifest Weight of the Evidence

{¶15} In a single assignment of error, J.G. argues that the trial court erred in adjudicating him delinquent when there was insufficient evidence to prove every element of the offenses, and the adjudications were against the manifest weight of the evidence. However, at oral argument before this court, J.G.'s counsel withdrew his sufficiency challenge and stated that J.G. was proceeding solely on his challenge to the manifest weight of the evidence.

{¶16} The same standard of review employed in adult criminal cases is used to review whether a juvenile adjudication of delinquency is against the manifest weight of the evidence. *In re A.G.*, 1st Dist. Hamilton No. C-200402, 2021-Ohio-3185, ¶ 19. A challenge to the manifest weight of the evidence requires this court to "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

### A. Failure to Comply and Failure to Stop After an Accident

{¶17}  J.G. first challenges his adjudications for failure to comply and failure to stop after an accident on the ground that the manifest weight of the evidence failed to establish that he was the operator of the motor vehicle.

{¶18}  The offense of failure to comply is set forth in R.C. 2921.331. It provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B).

{¶19}  The offense of failure to stop after an accident is set forth in R.C. 4549.02(A), which provides that "[i]n the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision." This statute requires the operator of the vehicle to remain at the scene until her or his name and address have been provided. *Id.*

{¶20}  Officer Collins testified that after reviewing his BWC, he was able to determine that J.G. was the operator of the motor vehicle. H.D. likewise testified that J.G. was operating the car at the time of the offenses. J.G. contends that the trial court erred in relying on the testimony from these two witnesses. He first argues that Officer Collins's testimony was internally inconsistent and unreliable.

{¶21}  Officer Collins's radio broadcast that the driver of the car was wearing a gray sweatshirt and dark pants was inconsistent with his trial testimony that the operator wore a white shirt and acid-washed or blue jeans. However, Officer Collins explained this discrepancy, testifying that after watching his BWC, he was able to

7

determine which of the three fleeing passengers had been the operator. Officer Collins testified that because all three occupants exited the car from the same door, he ascertained that the driver was the first to exit. If not, the remaining passengers would have been blocked from exiting. He further testified that the first person to exit the car wore a white shirt and acid-washed or blue jeans.

{¶22} The trial court was in the best position to judge the credibility of the witnesses. *State v. Harris,* 1st Dist. Hamilton No. C-230379, 2024-Ohio-1025, ¶ 22. It was aware of the inconsistencies in Officer Collins's explanation and testimony, and was entitled to believe some, all, or none of that testimony. *State v. Glover*, 2023-Ohio-1153, 212 N.E.3d 984, ¶ 58 (1st Dist.). It was not unreasonable for the trial court to accept Officer Collins's explanation regarding why he later determined that J.G. was the operator of the car despite his on-scene description of the operator. As the BWC demonstrates, it was a chaotic scene immediately after the car crashed into the guardrail. Three passengers exited the car, jumped the guardrail, and fled into the woods. Officer Collins first attempted to briefly give chase before radioing for back up. The trial court could reasonably have found that Officer Collins was focused on providing a description of the suspects so that they could be apprehended rather than accurately determining which had been the operator. Further, in weighing Officer Collins's testimony, the trial court was able to compare it with the corroborating testimony from H.D. that J.G. was the driver of the car.

{¶23} J.G. next argues that Officer Collins's BWC did not establish that J.G. was the operator of the motor vehicle. Specifically, J.G. contends that the BWC did not show which passenger first exited the car or from which door J.G. exited. After a review of the video, we agree with J.G.'s characterization of the video. The video shows that

when Officer Collins arrived on the scene and exited his patrol car, J.G. and a second individual were already outside of the stolen car. The BWC clearly establishes that J.G., who was next to the front driver's door, was the first to jump over the guardrail. And it clearly depicts the third passenger exiting from the front driver's door.

{¶24} While the video does not necessarily corroborate Officer Collins's testimony, it also does not contradict his testimony or the state's theory of the case. The trial court was entitled to watch the video and draw its own inferences and conclusions as to what happened based on the BWC and the accompanying testimony, and to determine if the BWC corroborated the officer's testimony. *State v. Jarosz*, 2013-Ohio-5839, 5 N.E.3d 1102, ¶ 20 (11th Dist.). A reviewing court must give due deference to the trial court in its role as the trier of fact and is "bound to interpret the evidence in a manner consistent with the trial court's ruling." *Id.*; *see State v. Bennett*, 1st Dist. Hamilton No. C-190181, 2020-Ohio-652, ¶ 12. The trial court could reasonably have inferred that J.G. was the first person out of the car because he was the first person to jump over the guardrail. Given J.G.'s location and proximity to the driver's door of the car at the time that he jumped, it was also reasonable to infer that he exited from the driver's door.

{¶25} J.G. further argues that the trial court erred in finding that his testimony lacked credibility and in believing the testimony of H.D. With respect to H.D., J.G. argues that she was pressured by the police into naming him as the driver of the car and that she was biased in favor of D., the only passenger in the car that she knew before these offenses. He further points out that when asked at trial to identify J.G.'s clothing, H.D. provided a description that did not match the clothing worn by J.G. at

9

trial or at the time of the offense. And he notes that Officer Collins's BWC was suspiciously muted during his questioning of H.D.

{¶26} We again point out that the trial court was in the best position to judge the credibility of the witnesses. *See Harris*, 1st Dist. Hamilton No. C-230379, 2024-Ohio-1025, at ¶ 22. H.D. acknowledged at trial that she cooperated with Officer Collins after she was informed that she could potentially face charges herself. The trial court was aware of H.D.'s potential motivations and biases. It was also aware of the confusion that arose when H.D. was asked to describe J.G.'s attire at trial. Despite H.D.'s apparent confusion, she remained steadfast in her identification of J.G. as the driver of the car. Underlying all of H.D.'s testimony was the fact that she, unlike J.G. and the other passengers, did not flee from Officer Collins. The trial court was able to weigh these factors when determining what weight to accord both H.D.'s and J.G.'s testimony, and we are not in a position to second guess the trial court's credibility determinations.

{¶27} Following our review of the record, we hold that the manifest weight of the evidence establishes that J.G. was the operator of the motor vehicle and that the trial court did not err in adjudicating him delinquent for failure to comply and failure to stop after an accident.

## B. Receiving Stolen Property

{¶28} J.G. next challenges his adjudication for receiving stolen property, arguing that the weight of the evidence failed to establish that he knew the car was stolen.

{¶29} The offense of receiving stolen property is set forth in R.C. 2913.51(A), which provides that "[n]o person shall receive, retain, or dispose of property of another

knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

**{¶30}** In determining whether an offender either knew or had reasonable cause to believe that property was stolen, "the trier of fact must determine the person's state of mind from the totality of the circumstances surrounding the alleged crime." *State v. Johnson*, 10th Dist. Franklin No. 19AP-296, 2020-Ohio-4077, ¶ 15. Knowledge may be inferred where the offender's possession of the property remains unexplained or is not satisfactorily explained in the context of the surrounding circumstances. *State v. Pangburn*, 12th Dist. Clermont No. CA2015-11-095, 2016-Ohio-3286, ¶ 15.

**{¶31}** Where an offender is charged with receiving stolen property and the property is an automobile, "courts have relied on the fact that a witness saw the defendant in the car shortly after it was stolen, and that the defendant abandoned the vehicle in fleeing from police." *State v. Patterson*, 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 52.

**{¶32}** The weight of the evidence in this case established that J.G. had knowledge the car had been stolen. We have already determined that the weight of the evidence established that J.G. was the driver. J.G. was found in possession of the car the day after it was stolen, and while driving the car, he refused to comply with Officer Collins's attempts to stop him. He fled from the officer both while driving the car and later on foot after the car crashed into a guardrail. On this evidence, the trial court did

not lose its way and commit a manifest miscarriage of justice in finding that J.G. had knowledge that the car was stolen. *See Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, at ¶ 16.

**{¶33}** We accordingly hold that the trial court did not err in adjudicating J.G. as delinquent for failure to comply, failure to stop after an accident, and receiving stolen property. J.G.'s assignment of error is overruled, and the judgments of the trial court are affirmed.

Judgments affirmed.

**ZAYAS, P.J.**, and **KINSLEY, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.